GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy (SBN 134180)
Marc L. Godino (SBN 182689)
Danielle L. Manning (SBN 313272)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com

GREENSTONE LAW APC
Mark S. Greenstone (SBN 199606)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9156
Facsimile: (310) 201-9160
E-mail: mgreenstone@greenstonelaw.com

JAURIGUE LAW GROUP
Michael J. Jaurigue (SBN 208123)
michael@jlglawyers.com
Ryan A. Stubbe (SBN 289074)
ryan@jlglawyers.com
300 West Glenoaks Boulevard, Suite 300
Glendale, California 91202
Telephone: (818) 630-7280
Facsimile: (888) 879-1697

*Attorneys for Plaintiff Mark Mina*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK MINA, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RED ROBIN INTERNATIONAL, INC.; RED ROBIN GOURMET BURGERS, INC.,<br><br>Defendant | Case No.<br><br>**CLASS-ACTION COMPLAINT FOR:**<br><br>Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227<br><br>**DEMAND FOR JURY TRIAL** |

447102.1 REDROBINTCPA

## INTRODUCTION

1. Plaintiff Mark Mina brings this class action on behalf of himself, individually, and all others similarly situated against Defendants Red Robin International, Inc. and Red Robin Gourmet Burgers, Inc. ("Defendants" or "Red Robin").

2. As alleged below, Red Robin has violated the TCPA through its unauthorized contact of consumers on the consumers' respective cellular telephones. Specifically, Red Robin has violated the TCPA by sending consumers unsolicited text messages for marketing and advertising purposes, without prior express written consent, invading the consumers' right to privacy.

3. Pursuant to 47 U.S.C. § 227(b)(3), Plaintiff and Class Members are entitled to, *inter alia*, statutory damages and injunctive relief for Red Robin's violations.

## PARTIES

4. Plaintiff is a resident of the County of San Bernardino, California. He is, and at all times relevant to this action was, a "person" as defined under 47 U.S.C. § 153.

5. Plaintiff is informed and believes, and based thereon alleges, that Red Robin International, Inc., is a Nevada corporation headquartered in Greenwood Village, Colorado. It is a wholly-owned subsidiary of Red Robin Gourmet Burgers, Inc. Red Robin International, Inc. is, and at all times relevant to this action was, a "person" as defined under 47 U.S.C. § 153.

6. Plaintiff is informed and believes, and based thereon alleges, that Red Robin Gourmet Burgers, Inc., is a Delaware corporation headquartered in Greenwood Village, Colorado. Red Robin Gourmet Burgers, Inc. is, and at all times relevant to this action was, a "person" as defined under 47 U.S.C. § 153.

## JURISDICTION & VENUE

7. This is a class action brought pursuant to Rule 23 of the Federal Rules of Civil Procedure.

8. This court has federal question jurisdiction over this action under 28 U.S.C. §1331 because Plaintiff's claim arises under the Telephone Consumer Protection Act

("TCPA"), 47 U.S.C. § 227, a Federal law. Furthermore, this Court has personal jurisdiction over Defendant because, as alleged below, Defendants have sufficient minimum contacts with California and/or otherwise intentionally avails themselves of the markets within California.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and omissions alleged herein took place in this District, as Plaintiff received the text message from Red Robin in this District.

## FACTUAL ALLEGATIONS

10. Red Robin is a restaurant chain with over 500 restaurants throughout the United States and Canada. Red Robin offers a loyalty program called "Red Robin Royalty" to drive guest traffic and build brand awareness by providing loyalty guests with various incentives and rewards.[1] As explained by Red Robin:

> Our Red Robin Royalty loyalty program operates in all of our U.S. and Canada Company-owned Red Robin restaurants and has been rolled out to most of our franchised restaurants. We engage our guests through Red Robin Royalty with offers designed to increase frequency of visits as a key part of our overall marketing strategy. We also inform enrolled guests early about new menu items to generate awareness and trial.[2]

11. On information and belief, during the relevant time period Red Robin regularly promoted, and continues to promote, the Red Robin Royalty program through text message marketing. On information and belief, Red Robin does so, at least in part, because text message marketing is a relatively inexpensive way to reach out to restaurant guests that enables Red Robin to compete with restaurant chains that have larger marketing resources and more extensive marketing strategies.[3] On information and

---

[1] *See* Red Robin Gourmet Burgers, Inc. Form 10K for the fiscal year ended December 31, 2017, pp. 2, 6, 11.
[2] *Id.* at p. 24.
[3] *Id.* at p. 11.

belief, both Defendants have worked together to implement the text message marketing of the Red Robin Royalty program, including but not limited to the determination of message content, frequency and recipients.

12. Plaintiff dined at a Red Robin restaurant within this District in 2015. During this visit the server asked Plaintiff whether he would like to participate in the Red Robin Royalty program and in response Plaintiff provided his telephone number, which has a California-based prefix.

13. Subsequently, Plaintiff received numerous text messages from Red Robin on his cellular telephone. For example, Plaintiff received the following text messages:

October 25, 2017:
> "Red Robin Royalty: Last chance for a Free Shake with $10 purchase! Check your Royalty account for details! Offer ends 10/28/18. Reply STOP to cancel."

March 26, 2018:
> "Red Robin Royalty: 1 week left to get a Free Tavern burger with additional burger purchase! Check your account for details! Ends 4/1/18. Reply STOP to cancel."

April 20, 2018:
> "Red Robin Royalty: Get a Free Appetizer w/$10 minimum purchase all weekend. Check your Royalty account for details. Ends 4/22/18. Reply STOP to cancel."

May 25, 2018:
> "Red Robin Royalty: One week left to get BOGO 50% off Gourmet Burgers! Reply STOP to cancel."

June 29, 2018:
> "Red Robin Royalty: Get a Free Appetizer w/$10 minimum purchase all weekend! Check your Royalty account for details. Ends 7/1/18. Reply STOP to cancel."

14. It is apparent from the context of the text messages above that the messages were not sent with an emergency purpose, but instead to advertise and promote the Red Robin Royalty program and Red Robin products.

15. Plaintiff is informed and believes, and based thereon alleges, that other participants of the Red Robin Royalty program have been and are sent messages by Red Robin that are the same as, or substantially similar to, the message that Plaintiff received. Plaintiff's cellular-telephone number is linked to a subscription plan under which he is charged each month for cellular-telephone and data services.

16. At no time prior to receiving the text messages referenced in paragraph 13 had Plaintiff ever signed a document, whether in paper or electronic form, reciting that Red Robin was authorized to send text messages to him using an automatic telephone dialing system for telemarketing or advertising purposes. Similarly, at no time prior to receiving the text messages referenced in paragraph 13 had Plaintiff ever signed a document, whether in paper or electronic form, reciting that he was not required to provide consent as a condition of purchasing any goods or services.

17. Plaintiff is informed and believes, and based thereon alleges, that his cellular-telephone number, along with numerous other telephone numbers, was entered into a database and that Defendant used equipment capable of storing and/or producing telephone numbers, as well as capable of dialing such numbers, to send the messages referenced in paragraph 13 to Plaintiff.

18. Plaintiff is informed and believes, and based thereon alleges, that thousands of similar messages were and continue to be sent *en masse* to the cellular telephones of participants in the Red Robin Royalty Program. Plaintiff is further informed and believes, and based thereon alleges, that all of these text messages were sent using the equipment or software referenced in paragraph 17 *supra*. In addition, Plaintiff is informed and believes, and based thereon alleges, that, at no time prior to receiving these text messages had any participant in the Red Robin Royalty program ever signed a document, whether in paper or electronic form, disclosing that they were authorizing the

delivery of telemarketing or advertising messages by way of an automatic telephone dialing system, or disclosing that they were not required to provide consent as a condition of purchasing any goods or services.

## CLASS-ACTION ALLEGATIONS

19. Plaintiff seeks to represent the following Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3):

All persons who, during the four years prior to the filing of the Complaint in this action through the date of class certification, received one or more text messages from Red Robin on their cellular telephone sent for an advertising or marketing purpose.

20. Plaintiff reserves the right to amend or modify the proposed Class, or to propose subclasses or limitations to particular issues, in response to facts later ascertained.

21. **Numerosity:** The identities of Class Members may be ascertained from Red Robin's own business and marketing records, as well as the records of Red Robin's telephone provider(s). Joinder of all Class Members would be impracticable due to the sizeable number of such Members and their likely lack of resources to initiate individual claims. Plaintiff estimates that thousands of text messages were sent to well-over the forty individuals required for numerosity purposes. Also, as explained below, the amount that is owed to any given Class Member under the TCPA is relatively small, making it impractical for them to bring their own individual suits.

22. **Typicality**: Plaintiff's claims are typical of those of Class Members because he received a text message from Red Robin; he never provided prior express written consent to receive the text message; and the text message was sent to his cellular telephone for an advertising and/or marketing purpose using the same equipment used to send text messages to all Class Members.

23. **Commonality**: There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual Class Members. These common questions include, without limitation:

    a)     whether the text messages constitute telemarketing or advertising within the meaning of the TCPA and its regulations;

    b)     whether the equipment used to send the text messages constitutes an automatic telephone dialing system within the meaning of the TCPA and its regulations;

    c)     whether prior express written consent was required under the TCPA and its regulations before sending any of the text messages; and,

    d)     whether the outright failure to secure any prior express written consent constitutes willful and knowing behavior within the meaning of the TCPA and its regulations.

24. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class. He is not aware of any conflicts that he has with Class Members, and he plans on pursuing the litigation vigorously. He also has the same interests as those of the Class, and he has retained counsel who are competent and experienced in class-action litigation. In addition, he has been actively involved in the litigation, he will continue to participate and be available for the duration of the litigation, and he understands the duties that he holds to the Class.

25. **Predominance and Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Again, the individual joinder of all Class Members is impracticable because of the relatively small recovery amounts at stake and the relative lack of resources available for individual Class Members vis-à-vis the large corporate Defendants. Additionally, the judicial system would be burdened with multiple trials of the same issues, and the potential for inconsistent or contradictory judgments would increase. The common questions detailed above, in fact, predominate in this action, as Class Members' claims arise out of the same

course of conduct to which Plaintiff was herself subject.  A class action therefore would conserve the resources of the parties and the Court while protecting the rights of Class Members.  Red Robin's conduct as described above is unlawful, continuing, and capable of repetition, and it will continue unless restrained and enjoined by the Court.  Moreover, it is a matter of public interest to obtain definitive answers to the legality of Red Robin's actions in a single case.

## FIRST CAUSE OF ACTION
Violation of the TCPA
47 U.S.C. § 227

26. Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set forth in this Complaint.

27. The United States Congress enacted the TCPA in order to balance individual privacy rights with legitimate telemarketing practices.  In enacting this statute, Congress found:

> (1) The use of the telephone to market goods and services to the home and other businesses is now pervasive due to the increased use of cost-effective telemarketing techniques.
>
> . . . .
>
> (10) Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> (11) Technologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.
>
> (12) Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting

> the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

TCPA of 1991, PL 102–243, December 20, 1991, 105 Stat 2394.

28. The TCPA specifically prohibits automated calls or messages to consumers' cellular-telephone numbers without first obtaining the express consent or permission of the consumers:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States[,] (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . (iii) to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1). A text message is a "call" within the meaning of the TCPA. *E.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

29. Under the relevant regulation, effective October 16, 2013, "prior express consent" as used in subsection (b)(1)(A)(iii) of the TCPA means "prior express *written* consent" for all telemarketing or advertising messages. 47 C.F.R. § 64.1200(a)(2) (emphasis supplied). Such consent must be signed by the consumer; disclose that the consumer authorizes the entity on whose behalf the message is sent to deliver, or cause to be delivered, telemarketing or advertising messages by way of an automatic telephone dialing system; and disclose that the consumer is not required to provide consent as a condition of purchasing any goods or services. *Id.* § 64.1200(f)(8). As alleged above, neither Plaintiff nor any Class Member ever signed, whether in paper or electronic form, a document containing these disclosures.

30. The foregoing acts and omissions of Defendants constitute a direct violation of the TCPA. Defendants were and are aware of the TCPA and its requirements, and, on information and belief, intentionally violated the law in an effort to maximize profits.

Defendants' violations therefore were willful.

31.     The TCPA establishes a private right of action for sending unauthorized messages to consumers:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions.  If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

32.     Pursuant to 47 U.S.C. § 227(b)(3)(B), Plaintiff and Class Members are entitled to an award of $500 in statutory damages for each and every text message that they received.  Moreover, because Defendants willfully and knowingly violated the TCPA as alleged above, Plaintiff and Class Members are entitled to treble damages. Finally, pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff and Class Members are entitled to injunctive relief.

## RELIEF REQUESTED

33.     Plaintiff, on behalf of himself and all others similarly situated request the Court to enter judgment against Defendants, and issue an order providing the following relief:

   a. an order certifying the Class under section Federal Rule of Civil Procedure 23;
   b. judgment in favor of Plaintiff and Class Members for the period of time commencing four years prior to the filing of the Complaint in this action

through the date of class certification, for statutory treble damages against Defendants, as well as for injunctive relief;

c. an award of pre-judgment and post-judgment interest, to the extent allowable by law;

d. an award of attorney's fees and costs of suit, to the extent allowable by law; and

e. such further relief as the Court deems fit and proper.

## DEMAND FOR JURY TRIAL

34. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: November 7, 2018

GLANCY PRONGAY & MURRAY LLP

By: /s/ *Mark S. Greenstone*
Lionel Z. Glancy
Marc L. Godino
Danielle L. Manning

GREENSTONE LAW APC
Mark S. Greenstone

JAURIGUE LAW GROUP
Michael J. Jaurigue
Ryan A. Stubbe

*Attorneys for Plaintiff*