IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-00612-RM-NYW

MARK MINA, as an individual and on behalf
of all others similarly situated,

    Plaintiff,

vs.

RED ROBIN INTERNATIONAL, INC.;
RED ROBIN GOURMET BURGERS, INC.

    Defendants.

_____

**DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE
PURSUANT TO FED. R. CIV. P. 12(B)(6)**
_____

Defendants RED ROBIN INTERNATIONAL, INC. and RED ROBIN GOURMET BURGERS, INC. (together "Red Robin") hereby move the Court to dismiss with prejudice all claims for relief set forth in Plaintiff Mark Mina's ("Plaintiff" or "Mina") First Amended Complaint [Doc. 108] ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

**Certification of Conferral**

Red Robin certifies that, pursuant to D.C. Colo. L. Civ. R. 7.1(A) and this Court's Practice Standard IV(N)(2)(a), counsel discussed the grounds for this Motion and the relief requested with Plaintiff's counsel. Plaintiff opposes the relief requested herein. Plaintiff's counsel advised that Plaintiff would not seek to further amend his FAC in light of Red Robin's Motion to Dismiss.

**I.**     **INTRODUCTION**

Plaintiff's claims under the Telephone Consumer Protection Act ("TCPA") in this case are predicated on the receipt of text messages he received after he voluntarily provided his phone

number to Red Robin while dining at a Red Robin restaurant. Plaintiff claims these text messages violated 47 U.S.C. § 227(b)(1)(A) of the TCPA, which restricts calls made using an (i) "automatic telephone dialing system" ("ATDS") or (ii) "artificial or prerecorded voice." Applying both the statutory language of the TCPA, as well as recent Supreme Court precedent, Plaintiff fails to state a claim.

*First*, Plaintiff's claim that Red Robin used an ATDS is barred by *Facebook v. Duguid*, 141 S. Ct. 1163 (2021). In *Duguid*, the Supreme Court held that the use of a random or sequential number generator to generate phone numbers is a key component of any device restricted by the TCPA as an ATDS: "In sum, Congress' definition of an autodialer requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator." 141 S. Ct. at 1170. Under this governing standard, Plaintiff's FAC is devoid of any facts that plead an ATDS was used to contact him – and in fact, Plaintiff concedes that Red Robin's technology did not randomly or sequentially generate any telephone numbers.

*Second*, Plaintiff's argument that the text messages he received qualify as an "artificial or prerecorded voice" message under the TCPA requires an absurd reading of the statutory language that falls far short of plausible. Courts repeatedly reject arguments – similar to the one Plaintiff asserts here – that attempt to expand the scope of liability under this provision of the TCPA.

As set forth below, Plaintiff's FAC should be dismissed with prejudice.

## II.     RELEVANT BACKGROUND

Plaintiff asserts a claim under the TCPA against Red Robin based on text messages he received related to reward offers in connection with Red Robin's loyalty program, Red Robin

Royalty. (FAC ¶¶ 18-20.) Specifically, Plaintiff joined Red Robin's frequent-guest program, "Red Robin Royalty" in 2015, and provided his mobile telephone number as part of that process. (FAC ¶¶ 17-19.) Now Plaintiff seeks as much as $1,500 per message in damages under the TCPA, on behalf of himself and a putative nationwide class, for the receipt of text messages from Red Robin. (FAC ¶ 58.)

With respect to the device used to send him the text messages at issue, Plaintiff concedes that any phone numbers that allegedly received these text messages from Red Robin are "stored in a list and *not themselves randomly or sequentially generated*," but asserts nonetheless that a random or sequential number generator is used to store these numbers (that are not themselves randomly or sequentially generated) and produce the numbers (that are not themselves randomly or sequentially generated) from a list. (FAC ¶ 39.) Although Plaintiff alleges that "no human intervention whatsoever exists in this process," he acknowledges that humans are, in fact, involved, in that they input phone numbers provided by Red Robin Royalty members to receive discounts and select days and times for those numbers to receive text messages. (FAC ¶ 39.)

Plaintiff also alleges that Red Robin used an "artificial or prerecorded voice" in the non-audible medium of text messaging. (FAC ¶¶ 28-32.) In support of this interpretation, Plaintiff cherry-picks from a dictionary definition, which defines "voice" as "an instrument or medium of expression." (FAC ¶ 28.) Plaintiff alleges no facts to support his theory that the term "voice" should otherwise apply to the text messages he received.

### III. STANDARD OF REVIEW

Under Rule 12(b)(6), a complaint "must be dismissed if it does not plead enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). Although the Court must accept all well-pleaded allegations in Plaintiff's FAC as true and view those allegations in the light most favorable to the nonmoving party, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, "the plaintiff must do more than articulate a set of facts that could 'conceivabl[y]' or 'possibly' give rise to a claim; he must 'nudge[] his claims across the line from conceivable to plausible.'" *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1215 (D. Colo. 2012) (citations omitted).

TCPA claims are subject to the same pleading established in *Iqbal* and *Twombly*. *Rallo v. Palmer Admin. Services*, Civ. No. 18-cv-01510-RM-MEH, 2019 WL 1468411, at *3 (D. Colo. Apr. 3, 2019). Thus, adequate allegations of facts to support the use of TCPA-restricted equipment (ATDS/prerecorded messaging) must be alleged to survive a Rule 12(b)(6) challenge.

## IV.     ARGUMENT

To satisfy the elements of a Section 227(b) claim under the TCPA, Plaintiff must allege: (1) a call was made; (2) the caller used an ATDS or artificial or prerecorded voice; (3) the telephone number called was assigned to a cellular telephone service; and (4) the caller did not have prior express consent of the recipient. *See Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 982 (N.D. Ill. 2013) (citing 47 U.S.C. § 227(b)(1)(A)(iii)); *see also Rallo*, 2019 WL 1468411 at *2. Here, Plaintiff fails to sufficiently allege either the use of (i) an ATDS, or (ii) an "artificial or prerecorded voice." Accordingly, the FAC should be dismissed.

### A.     Plaintiff Fails to Plausibly Allege Use of an ATDS

An ATDS is defined under the TCPA as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

4

(B) to dial such numbers." 47 U.S.C. § 227(a)(1); *see also Duguid*, 141 S. Ct. at 1167. In *Duguid*, the Supreme Court explicitly considered – at the pleading stage – the question of whether the definition of an ATDS "encompasses equipment that can 'store' and dial telephone numbers, even if the device does not 'use' a random or sequential number generator." 141 S. Ct. at 1167. It unanimously determined that the answer to that question is no. *Id.*

In reaching its conclusion, the Supreme Court held that "Congress expressly found that the use of random or sequential number generator technology caused unique problems for business, emergency and cellular lines . . . Unsurprisingly, then, the autodialer definition Congress employed includes only devices that use such technology, and the autodialer prohibitions target calls made to such lines." *Id.* at 1172. By rejecting the broad interpretation advanced by the plaintiff, the *Duguid* court made clear that the definition of an ATDS under the TCPA excludes equipment that does not "use a random or sequential number generator" to generate telephone numbers. *Id.* at 1171. Here, Plaintiff concedes that his telephone number was not randomly generated. (FAC ¶ 39.) Thus, this holding is fatal to Plaintiff's claim.

### 1. Red Robin Did Not Generate Plaintiff's Telephone Number

Following *Duguid*, courts around the country have dismissed TCPA claims, where, as here, the technology at issue did not generate the telephone numbers that received the calls. *See, e.g.*, *Brickman v. Facebook, Inc.*, No. 16-cv-00751-WHO, 2021 WL 4198512, at *2 (N.D. Cal. Sept. 15, 2021) (finding that numbers "pulled from an existing list" were not "randomly or sequentially generated"); *Hufnus v. DoNotPay, Inc.*, No. 20-cv-08701-VC, 2021 WL 2585488, at *1 (N.D. Cal. June 24, 2021) (finding that a platform that "only contacts phone numbers specifically provided by consumers" does not qualify as an ATDS under the TCPA); *see also Watts v. Emergency*

*Twenty Four, Inc.*, No. 20-cv-01820, 2021 WL 2529613, at *1, *3 (N.D. Ill. June 21, 2021) (granting defendant's motion to dismiss as facts alleged in complaint failed to support an inference that the system used by defendant randomly or sequentially generated numbers that would constitute an ATDS).

Here, Plaintiff explicitly alleges that "the phone numbers to be called are stored in a list and *not themselves randomly or sequentially generated*." (FAC ¶ 39) (emphasis added). Although Plaintiff uses the words "random or sequential number generator" elsewhere in the FAC, he fails to sufficiently allege actual use of such a device as required by *Duguid*. This warrants dismissal of his claim.[1]

### 2. Dialing Numbers in a Sequential Order is Insufficient to Qualify as an ATDS

Plaintiff acknowledges that Red Robin did not generate the phone numbers to which it sent text messages, but nevertheless attempts an end around *Duguid* by citing to a lone footnote to argue that a device that purportedly selects phone numbers from a pre-programmed list qualifies as an ATDS. (FAC ¶ 8, citing *Duguid*, 1141 S.Ct. at 1171-72, n. 7.) Courts have consistently rejected this interpretation, however, and dismissed similar claims at the pleading stage.

---

[1] In a recent decision in this District, the court allowed a case to proceed past a motion to dismiss where the plaintiff alleged that the platform at issue *generated* phone numbers "in sequential order." *Montanez v. Future Vision Brain Bank, LLC*, No. 20-cv-02959-CMA-MEH, 2021 WL 1697928, at *8 (D. Colo. Apr. 29, 2021). Here, Plaintiff alleges the opposite because he admits in the FAC – as he must – that he provided his phone number to Red Robin and that the phone numbers to be called by Red Robin "are not themselves randomly or sequentially generated." (FAC ¶¶ 17-19, 39.) These allegations foreclose any possibility the numbers were generated in a random or sequential order.

Further, although the *Montanez* court relied upon the pre-*Duguid* decision in *Geraci v. Red Robin Int'l, Inc.*, No. 19-cv-01826-RM-KLM, 2020 WL 2309559 (D. Colo. Feb. 28, 2020), *report and recommendation adopted*, No. 1:19-cv-01826-RM-KLM, 2020 WL 1443597 (D. Colo. Mar. 25, 2020), that case was decided without the benefit of the Supreme Court's ruling in *Duguid*. In addition, *Geraci* addressed a different pleading than the one presented to this Court, where there is an explicit concession that the device at issue does not perform the functionality required to qualify as an ATDS.

In *Hufnus*, for example, the court found that a platform that only sends text messages to phone numbers specifically provided by customers during a registration process is not an ATDS. 2021 WL 2585488, at *1. The *Hufnus* plaintiff attempted to defeat the motion to dismiss by arguing that the device "uses a random and/or sequential generator to pull from the list of numbers to send targeted text messages; and uses a random and/or sequential generator to determine the sequence in which to send messages." *Id.* The *Hufnus* court explicitly rejected this argument. *Id.* Here, Plaintiff attempts to rely upon similar allegations that "the texting platform uses an algorithm whereby a random or sequential number generator, similar to a randomization formula or sequential dialing formula, selects which number to dial from the stored list of numbers and sequences those numbers in order to automatically dial the numbers and send ou[t] text messages en masse." (FAC ¶¶ 39-41.)

With respect to Plaintiff's claim that footnote 7 of *Duguid* salvages claims that rely upon text messages sent from a "pre-produced list," the *Hufnus* court rejected that argument as well, finding that it would require an "acontextual reading" of the language, "both with respect to the footnote specifically and the opinion more generally." *Hufnus*, 2021 WL 2585488, at *1. Indeed, the "preproduced list" referenced in *Duguid* was itself created through a random or sequential number generator and not, as here, created by consumers providing their numbers voluntarily. *Id.* (citing *Duguid*, 141 S. Ct. 1173, n.7). Further, allowing Plaintiff's allegations to survive a motion to dismiss conflicts with *Duguid*'s "holding and rationale," as the Supreme Court made clear that the TCPA's definition of ATDS "concerns devices that allow companies to dial random or sequential blocks of telephone numbers automatically," and not systems, such as Red Robin's, that

7

are dialing customer-provided phone numbers.[2]  *Id.*; *see also Barry v. Ally Fin., Inc.*, No. 20-cv-12378, 2021 WL 2936636, at *4 (E.D. Mich. July 13, 2021) ("[T]hese calls were targeted at specific individuals in connection with specific accounts held by Defendant. That ends this case.").

Other courts examining the issue have reached the same result.  In *Watts*, the court dismissed a TCPA claim alleging that equipment that stored a phone number in a database and dialed that stored number qualified as an ATDS. 2021 WL 2529613, at *3.  The *Brickman* court dismissed a TCPA claim that "relied heavily on footnote 7," finding that allegations that an automated algorithm that sent texts to thousands of users were insufficient to meet the definition of an ATDS where "the numbers called were not randomly or sequentially generated; they were pulled from an existing list." 2021 WL 4198512, at *2.  Indeed, the court held that such a system does not qualify as an ATDS even if the numbers from the list "are pulled and then ordered 'randomly or sequentially' by an algorithm and stored for later use."  *Id.*  As noted in *Brickman*, several additional courts have adopted the *Hufnus* approach on this issue.  *See*, *e.g.*, *Franco v. Alorica Inc.*, No. 20-cv-05035-DOC-KESX, 2021 WL 3812872, at *3 (C.D. Cal. July 27, 2021) ("When a defendant randomly makes calls from a curated list, it is not randomly or sequentially generating phone numbers."); *Borden v. eFinancial, LLC*, No. 19-cv-01430-JLR, 2021 WL 3602479, at *5 (W.D. Wash. Aug. 13, 2021) (finding no ATDS when the Plaintiff "expressly alleges that he provided his phone number" to the sender of the text messages); *Edwards v. Alorica,*

---

[2] Such an expansive reading is particularly inappropriate in the context of text messages, which are not even mentioned under the TCPA.  In connection with oral argument in *Facebook, Inc. v. Duguid*, Justice Thomas questioned whether text messages—as opposed to calls—are even covered by the TCPA. Transcript of Oral Argument at 7:9–8:15, *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021).  The Court expressly reserved decision on this issue. *Id.* at 1167 n.2 ("Neither party disputes that the TCPA's prohibition also extends to sending unsolicited text messages . . . We therefore assume that it does *without considering or resolving that issue*.") (emphasis added).

8

*Inc.*, No. 8:19-cv-02124-JWH-DFMx, 2021 U.S. Dist. LEXIS 165773, *4-5 (C.D. Cal. Aug. 30, 2021) (finding no ATDS when the Plaintiff failed to allege that the system used to make the calls at issue "created her number randomly or sequentially"). This Court should reach the same result.

### B.  Plaintiff Fails to Plausibly Allege Use of an Artificial or Prerecorded Voice

Under Section 227(b), it is also unlawful to make a call, other than for emergency purposes or with consent, using an "artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A). Plaintiff's claim that his receipt of text messages fall within the purview of this restriction also requires an "acontextual reading" of the TCPA and has no basis in precedent. Accordingly, this claim should also be dismissed.

#### 1.  In the Context of the TCPA, "Voice" Requires Audible Sound

In examining the language of a statute, the court "must construe the words of the statute in their ordinary, everyday sense." *Toomer v. City Cab*, 443 F.3d 1191, 1194 (10th Cir. 2006). If a statute's terms are "clear and unambiguous, the inquiry ends and we simply give effect to the plain language of the statute." *Id.* (citing cases). Whether the statutory language is plain or ambiguous "is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (citing *Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1177 (10th Cir. 2005)). Here, it is plain that "voice" does not include text messages.

*First*, at least one court has already considered and rejected Plaintiff's theory that text messages constitute an "artificial or prerecorded voice." *Glauser v. GroupMe, Inc.*, No. 11-cv-02584 PJH, 2015 WL 475111, at *6 (N.D. Cal. Feb. 4, 2015). The *Glausner* court quickly dispatched with the argument in its decision granting summary judgment to the defendant, noting

that the plaintiff presented "no authority for the argument that a text message can have a 'voice'— artificial, prerecorded, or otherwise." *Id.*

*Second*, the words "artificial or prerecorded voice" are clear and unambiguous that they must include an element of audible sound. *See Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 640-41 (5th Cir. 2015) (finding that in order for there to be liability under the "artificial or prerecorded voice" section of the TCPA, "an artificial or prerecorded voice must actually play"); *Smith v. Pro Custom Solar LLC*, No. 19-cv-20673-KMESK, 2021 WL 141336, at *3 (D.N.J. Jan. 15, 2021) (finding that allegations related to a "prerecorded voice" must include sufficient description of the voice, such as describing the voice's "clarity and cadence" or the absence of anything specific to a live person on the other side of the line). As Plaintiff's allegations do not include any element of audible sound, his claim based on the use of an "artificial or prerecorded voice" necessarily fails.

The *Ybarra* court considered the plain meaning of the statutory language of Section 227(b)(1)(A)(iii) of the TCPA to determine whether an artificial or prerecorded voice was used when it only played on calls answered by a live person. The Fifth Circuit concluded that, in the context of the TCPA, in order for an artificial and prerecorded voice to be used, the artificial voice must have "spoke[n]." 807 F.3d at 640-41. If a prerecorded voice is never actually heard by the recipient of the call, then no prerecorded voice was ever used. *Id.* at 641. The *Ybarra* court's analysis focused entirely on whether the alleged "artificial or prerecorded voice" produced any sound that was heard by the recipient, as the plain meaning of the statutory language in the context of the TCPA demands. *Id.* at 640-41. Under this standard, the FAC fails to adequately allege the use of an "artificial or prerecorded voice."

10

In *Smith*, the court also considered whether allegations involving the use of an "artificial or prerecorded voice" could survive a motion to dismiss. 2021 WL 141336, at *3. In holding that the plaintiff failed to provide sufficient detail about the alleged prerecorded voice, the *Smith* court noted potential examples that could satisfy the requirement. *Id.* All of the examples involved details about the sound of the voice as spoken. *Id.* The *Smith* court also distinguished between the "voice" and the "message" conveyed by the voice, consistent with the plain meaning of the statutory language within the context of the TCPA. *Id.* ("Absent some minimal description of the voice or message, Smith has put forward no more than a conclusion—not any factual allegations that allow me to infer a right to relief."). This Court should likewise reject Plaintiff's effort to expand the scope of the term "voice" under the TCPA.

### 2. Plaintiff's Cited Dictionary Definition is not Plausible Within the Context of the TCPA

In his quest to shoehorn text messages into the "artificial or prerecorded voice" restrictions under the TCPA, Plaintiff alleges that in "Merriam Webster's Dictionary, 'voice;' is defined as 'an instrument or medium of expression.'" (FAC ¶ 28.) This is merely an excerpt from a lengthy Merriam-Webster entry for "voice." *Voice*, Merriam-Webster.com/dictionary/voice (last visited October 8, 2021). Indeed, "voice" has several meanings. For example, definition 1(a) for "voice" is "sound produced by vertebrates by means of lungs, larynx, or syrinx; especially: sound so produced by human beings." *Id.* Merriam-Webster lists no fewer than nine additional definitions above the portion excerpted by Plaintiff, all of which include audible sound in some form. *See id.* at 1(b)(1), 1(b)(2), 1(b)(3), 1(b)(4), 1(b)(5), 1(b)(6), 1(c), 1(d), and 2. Accordingly, it is not plausible that the outlandish definition for "voice" advanced in the FAC would be the applicable definition in this context. *See Smith-Faris Co. for Use of Keasbey & Mattison v. Jameson Mem'l*

*Hosp. Ass'n*, 313 Pa. 254, 261 (1933) (finding only one dictionary definition of the word "voice" applicable in the context of a contract for construction services).

The Federal Communication Commission recognized this common understanding when it distinguished between "voice calls" and "text calls" in the context of the TCPA in determining what qualifies as a "call" under the statute. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 18 F.C.C. Rcd. 14014, 14115 (July 3, 2003). It follows, then, that "an automated or prerecorded voice" would by definition only apply to "voice calls" and not the "text calls" received by Plaintiff. As such, Plaintiff's allegations are implausible and warrant dismissal.

## V. CONCLUSION

For the above reasons, Defendants Red Robin International, Inc. and Red Robin Gourmet Burgers, Inc. respectfully request that the Court dismiss all claims for relief asserted in Plaintiff's FAC with prejudice and for any other relief the Court deems just and proper.

DATED: October 8, 2021.

    Respectfully submitted,

    /s/ *Lauri A. Mazzuchetti*

    Lauri A. Mazzuchetti
    Whitney M. Smith
    KELLEY DRYE & WARREN LLP
    One Jefferson Road
    Parsippany, New Jersey 07054
    lmazzuchetti@kelleydrye.com
    wsmith@kelleydrye.com
    (973) 503-5900

Stacy A. Carpenter, #27227
Richard M. Murray, #38940
POLSINELLI PC
1401 Lawrence Street, Suite 2300
Denver, Colorado 80202
Telephone:  303-572-9300
Facsimile:  303-572-7883
Email: scarpenter@polsinelli.com
rmurray@polsinelli.com

*Counsel for Defendants Red Robin International, Inc. and Red Robin Gourmet Burgers, Inc.*

## CERTIFICATE OF SERVICE

I certify that on October 8, 2021, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to all parties of record.

*/s/ Lauri A. Mazzuchetti*
Lauri A. Mazzuchetti