IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00612-RM-NYW

MARK MINA, as an individually and on behalf of all others similarly situated,

      Plaintiff,

v.

RED ROBIN INTERNATIONAL, INC., and
RED ROBIN GOURMET BURGERS, INC.,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

This matter is before the court on Defendants' Motion to Dismiss With Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion" or "Motion to Dismiss") [Doc. 110]. This court considers the Motion pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated March 6, 2020, [Doc. 55], and the Memorandum dated November 1, 2021. [Doc. 114]. The court concludes that oral argument would not materially assist in the resolution of this matter. Accordingly, upon review of the Motion, the related briefing, and the applicable case law, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED**.

## BACKGROUND

The court takes the following facts from the First Amended Class-Action Complaint (the "Amended Complaint") [Doc. 108] and presumes they are true for purposes of the Motion to Dismiss. In 2015, Plaintiff Mark Mina ("Plaintiff" or "Mr. Mina") dined at a Red Robin restaurant in San Bernardino County, California. [Doc. 108 at ¶ 19]. During Mr. Mina's visit, a server asked Mr. Mina if he would like to participate in the Red Robin Royalty Program. [*Id.*]. "[I]n response,"

Plaintiff provided his telephone number.  [*Id.*].  According to Mr. Mina, he did not sign any document "reciting that Red Robin was authorized to send text messages to him using an automatic telephone dialing system for telemarketing or advertising purposes."  [*Id.* at ¶ 33].

Plaintiff alleges that after he provided his telephone number to the Red Robin server, he received "numerous" text messages from Red Robin that were sent "to advertise and promote the Red Robin Royalty program and Red Robin products."  [*Id.* at ¶¶ 20-21].  Plaintiff alleges that these text messages were impersonal, "based on a template," and were "drafted in advance and sent out automatically based on pre-programmed parameters."  [*Id.* at ¶¶ 22, 24-25].  Reb Robin "sent or transmitted, or had sent or transmitted on its behalf, the same or substantially similar unsolicited text messages *en masse* to hundreds of thousands of customers' cellular telephones nationwide in an effort to advertise for Red Robin restaurants."  [*Id.* at ¶ 23].

Specifically, Mr. Mina asserts that Red Robin used "the Twilio platform" to send the subject text messages, which provides customers the ability to send automated text messages to mass lists of recipients "all at once, with the click of a button," or via an automatic, scheduled text.  [*Id.* at ¶¶ 36-37].  In other words, according to Mr. Mina, the text messages were not sent by a live agent, but were instead transmitted using a "man-made humanly contrived program" that was "pre-programmed in advance to send messages out to large groups of consumers all at once, either sequentially or via algorithmic dialing, i.e. in an automated fashion by a computer," which "created a one-sided conversation in which Plaintiff could not receive a response to [his] questions and/or concerns."  [*Id.* at ¶ 27, 29].  While Mr. Mina concedes that "the phone numbers to be called are stored in a list and [are] not themselves randomly or sequentially generated," he alleges that the Twilio platform "uses an algorithm whereby a random or sequential number generator . . . selects which number to dial from the stored list of numbers, and sequences those numbers in order to

automatically dial the numbers and send [out] text messages en masse." [*Id.* at ¶ 39]. Mr. Mina asserts that aside from imputing the telephone numbers into the program and selecting the dates and times during which a promotional campaign will take place, "[n]o human intervention whatsoever" exists in this process. [*Id.* at ¶ 40].

Plaintiff states that he incurred "a charge" for the telephonic communications that he received from Red Robin. [*Id.* at ¶ 34]. In addition, he alleges that Red Robin's telephonic communications "forced [him] to live without the utility of [his] cellular phone[]" because his cell phone was "occupied [by] text messages, causing annoyance and lost time." [*Id.* at ¶ 35]. As a result, Mr. Mina initiated this case against Defendants Red Robin International, Inc. and Red Robin Gourmet Burgers, Inc. (collectively, "Defendants") on November 17, 2018 in the United States District Court for the Central District of California. [Doc. 1]. On March 3, 2020, the Central District of California transferred this matter to the United States District Court for the District of Colorado upon concluding that the convenience of the parties and witnesses, as well as the interests of justice, warranted a transfer of the case. *See* [Doc. 50]. Upon transfer to this District, the case was assigned to the Honorable Raymond P. Moore and referred to the undersigned. [Doc. 53; Doc. 55].

On August 28, 2020, Judge Moore stayed all proceedings in this matter pending a decision from the United States Supreme Court in *Facebook, Inc. v. Duguid*. *See* [Doc. 77]. The Supreme Court issued its decision on April 1, 2021, *see* 141 S. Ct. 1163 (2021), and the stay in this matter was subsequently lifted. [Doc. 82]. After this court addressed a number of procedural matters with the Parties concerning the status and scope of this case, *see, e.g.*, [Doc. 84; Doc. 90; Doc. 93; Doc. 95; Doc. 106], Mr. Mina filed the Amended Complaint with Defendants' consent on September 15, 2021, raising one claim under the Telephone Consumer Protection Act ("TCPA").

[Doc. 108]; *see also* [Doc. 106; Doc. 109].  Thereafter, Defendants filed the instant Motion to Dismiss, arguing that Plaintiff's claim should be dismissed with prejudice for failure to state a claim under Rule 12(b)(6).  [Doc. 110 at 1].  This court stayed discovery in this matter upon joint motion of the Parties.  *See* [Doc. 116; Doc. 119].  Being fully advised in the premises, this court considers the Parties' arguments below.

## LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim "across the line from conceivable to plausible.").  The court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

**ANALYSIS**

The TCPA makes it unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii).  In other words, a person can violate the TCPA either by using an "automatic telephone dialing system" (an "autodialer") or by using an "artificial or prerecorded voice."  In his Amended Complaint, Mr. Mina alleges that Defendants violated the TCPA using both methods: first, by sending him text messages[1] using an autodialer, [Doc. 108 at ¶ 54], and second, by sending him text messages using an artificial or prerecorded voice.  [*Id.* at ¶ 55].  Defendants argue in their Motion to Dismiss that Plaintiff's allegations are deficient to establish a TCPA violation using either method, as he has not alleged facts demonstrating that Defendants used either an autodialer or an artificial or prerecorded voice in sending text messages to Plaintiff.  *See* [Doc. 110 at 4, 9].  The court addresses the sufficiency of Plaintiff's allegations below.

I.      **The Use of an Autodialer**

The TCPA defines "automatic telephone dialing system" as a piece of equipment which has the capacity to both "store or produce telephone numbers to be called, using a random or sequential number generator" and to dial those numbers.  47 U.S.C. § 227(a)(1)(A)-(B).  The Supreme Court granted certiorari in a TCPA case—*Duguid*—"to resolve a conflict among the Courts of Appeals regarding whether an autodialer must have the capacity to generate random or sequential phone numbers." *Duguid*, 141 S. Ct. at 1168.  Specifically, the Supreme Court reviewed

---

[1] The Parties assume that the TCPA's prohibition also prohibits the transmission of unsolicited text messages, *see* [Doc. 110; Doc. 111], and accordingly, the court does so as well.  *See Duguid*, 141 S. Ct. at 1168 n.2.

a decision from the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") wherein the Ninth Circuit had held that an autodialer under the TCPA "need not be able to use a random or sequential generator to store numbers; it need only have the capacity to 'store numbers to be called' and 'to dial such numbers automatically.'" *Id.* (quoting 926 F.3d 1146, 1151 (9th Cir. 2019)). "In essence, the Ninth Circuit's view was that the requirement of using a number generator only applied to producing the phone number—not to storing it." *Eggleston v. Reward Zone USA LLC*, No. 2:20-cv-01027-SVW-KS, 2022 WL 886094, at *2 (C.D. Cal. Jan. 28, 2022).

The Supreme Court rejected this interpretation of the TCPA, holding that the clause "using a random or sequential number generator" modifies *both* verbs found in § 227(a)(1)(A), *see Duguid*, 141 S. Ct. at 1169, and thus, a device is not an autodialer under the TCPA unless it "ha[s] the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id.* at 1167. In other words, "a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce numbers to be called." *Id.* at 1173. Thus, it follows that if a piece of equipment "neither stores nor produces numbers 'using a random or sequential number generator,' it is not an autodialer." *Id.* at 1169.

Defendants assert that in light of *Duguid*, Plaintiff's allegations are insufficient to allege that Defendants used an autodialer to send the subject text messages to Plaintiff; for this reason, they maintain that Plaintiff fails to state a claim under Rule 12(b)(6). *See* [Doc. 110 at 5]. The crux of Defendants' argument is Mr. Mina's allegation that "the phone numbers to be called [by Defendants] are stored in a list and [are] not themselves randomly or sequentially generated." [*Id.* at 6 (citing [Doc. 108 at ¶ 39])]. According to Defendants, this allegation is essentially a concession that Defendants did not use an autodialer as defined in the TCPA. [*Id.* at 2, 5].

Mr. Mina disagrees.[2] He maintains that *Duguid* does not foreclose a conclusion that the text messaging program used by Defendants constitutes an autodialer under the TCPA because he has alleged that Defendants' program has the capacity to randomly or sequentially decide which numbers to dial from a stored list.  [Doc. 111 at 15-16].  Asserting that "very few" attorneys "understand what a random or sequential number generator actually is," [*id.* at 16], Mr. Mina suggests that the term "number generator" as used in the TCPA refers to a term of art in the software engineering field; however, Plaintiff does not provide any precise definition that he believes should be ascribed to a "number generator." *See generally* [*id.*].  As the court understands Plaintiff's argument, Plaintiff suggests that an autodialer under the TCPA need not have the capacity to store or produce telephone numbers using a *telephone* number generator, but rather, the device must only have the capacity to randomly or sequentially choose which numbers to dial

---

[2] In conjunction with his Response, Mr. Mina filed a "Request for Judicial Notice" in which he requests that the court take judicial notice of (1) an amicus brief filed by Mr. Mina's present counsel in *Duguid*; and (2) hearing testimony from the Subcommittee on Communications of the Committee on Commerce, Science and Transportation, United States Senate One Hundred Second Congress First Session.  [Doc. 112 at 2].  Typically, a court may only consider the four corners of a complaint when ruling on a motion to dismiss under Rule 12(b)(6).  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  However, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).  Mr. Mina makes no argument supporting his request that the court take judicial notice of the documents pursuant to Federal Rule of Evidence 201, which provides that a court may judicially notice a fact if it is "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *see also* [Doc. 112 at 2].  Moreover, the court notes that Mr. Mina attempts to incorporate large substantive swaths of the documents into his Response by reference, *see, e.g.*, [Doc. 111 at 18, 19 n.11], and consideration of these documents would arguably contravene the presiding judge's Practice Standards, which limit all responses to 25 pages.  *See* Practice Standards (Civil), Judge Raymond P. Moore, § IV.C.1.  And in any event, when a court does take judicial notice of documents, it may do so only to "show their contents, not to prove the truth of the matters asserted therein." *Tal*, 453 F.3d at 1264 n.24.  Finally, the court concludes that it may rule on the Motion to Dismiss without considering the extraneous documents submitted by Plaintiff.  For all of these reasons, the court declines to consider the substantive assertions contained in these documents.

using some sort of automated dialing system. *See* [*id.* (Plaintiff asserting that "[n]umber generators do not generate telephone numbers" but rather "stor[e] the lists of telephone numbers to be called[] and produc[e] those telephone numbers from the list to the dialing system")]. Plaintiff's argument is thus akin to an assertion that the TCPA's definition of "automatic telephone dialing system" includes a device or program that merely randomly or sequentially selects which number to dial, even if such a selection is made from a predetermined list of telephone numbers.

Applying *Duguid*, the plain language of the TCPA, and post-*Duguid* case law interpreting the TCPA, the court concludes that a device's capacity to randomly or sequentially select, from a prepopulated list, which number to communicate with does not render it an autodialer under the TCPA. First, the court is respectfully not persuaded by Mr. Mina's suggestion that the use of the term "number generator" in the TCPA does not refer to a *telephone* number generator, but instead refers to a not-yet-defined term of art in the software-engineering field concerning the random selection of items from a predetermined list. Nothing in the Supreme Court's determination in *Duguid* directs this court to reach that conclusion. As a Northern District of California court succinctly explained, "as a textual matter, the '*number* generator' (whether random or sequential) specified in § 227(a)(1)(A) implicitly refers back to a 'telephone number[]' – *i.e.*, the preceding phrase." *Tehrani v. Joie de Vivre Hosp., LLC*, No. 19-cv-08168-EMC, 2021 WL 3886043, at *4 (N.D. Cal. Aug. 31, 2021). "This implicit reference is confirmed by subsection (B) which refers to the capacity to *dial* 'such numbers.'" *Id.* It follows, then, that "throughout § 227(a)(1)," the terms "number" or "numbers" refer to *telephone* numbers. *Id.*

Other courts have reached the same conclusion. *See, e.g.*, *Beal v. Outfield Brew House, LLC*, 29 F.4th 391, 394 (8th Cir. 2022) ("[A] random number generator produces by generating a random number. Because [defendant] does not generate *phone numbers* to be called, it does not

'produce telephone numbers to be called' for purposes of § 227(a)(1) of the TCPA.") (emphasis added); *Eggleston*, 2022 WL 886094, at \*4 (an autodialer must use a number generator to generate the phone numbers themselves); *Austria v. Alorica, Inc.*, No. 2:20-cv-05019-ODW-PVCX, 2021 WL 5968404, at \*4 (C.D. Cal. Dec. 16, 2021) (same).   Mr. Mina cites no legal authority demonstrating that it is appropriate to look to the field of software engineering to extend the definition of a statutory term beyond its clear meaning. *See generally* [Doc. 111 at 16].   If Congress intended to define "number generator" using a meaning other than its plain and ordinary meaning—let alone ascribe to the term a meaning encompassing a "very specific type of automation from a programming perspective," *see* [Doc. 111 at 16]—Congress could have defined that term within the statute to inform the public, attorneys, and courts—who Plaintiff suggests "do not understand what a random or sequential number generator is," *see* [*id.*]—of such a particularized meaning.   It did not do so.   *See* 47 U.S.C. § 227(a)(1).

Moreover, in the court's view, *Duguid* forecloses Plaintiff's argument, as the Supreme Court plainly stated that "[t]o qualify as an 'automatic telephone dialing system,' a device **must have** the capacity **either** to store a telephone number using a random or sequential generator **or** to produce a telephone number using a random or sequential number generator." *Duguid*, 141 S. Ct. at 1167 (emphases added).   Here, Mr. Mina concedes that Defendants' program does not store numbers using a random or sequential generator, instead alleging that "Red Robin collected and stored all the phone numbers of Plaintiff and others similarly situated into a list" and that the numbers are "not themselves randomly or sequentially generated." [Doc. 108 at ¶¶ 38-39].   Nor does Plaintiff allege in the Amended Complaint that Defendants *produce* numbers using a random or sequential number generator—instead, he asserts that Defendants' software "*selects* which number to dial from the stored list of numbers, and sequences those numbers in order to

automatically dial the numbers and send [out] text messages en masse." [*Id.* at ¶ 39 (emphasis added)]. But "a random number generator does not *produce* by selecting a random number." *Beal*, 29 F.4th at 395 (emphasis added). Rather, "a random number generator produces by *generating* a random number." *Id.* at 394.

Courts interpreting the TCPA post-*Duguid* have rejected the argument that Plaintiff asserts here—that a device may be deemed an autodialer under the TCPA even if it uses a preprepared list of numbers, so long as the device randomly or sequentially chooses which numbers on that list to contact. In *Hufnus v. DoNotPay, Inc.*, the United States District Court for the Northern District of California rejected the plaintiff's argument that a platform which "uses a random number generator to determine the order in which to pick from the preproduced list of consumer phone numbers" qualifies as an autodialer under the TCPA. *See* No. 20-cv-08701-VC, 2021 WL 2585488, at *1 (N.D. Cal. June 24, 2021). In fact, the *Hufnus* court determined that such a platform "is akin to the systems deemed to *not* qualify as autodialers by the Courts of Appeals with which the Supreme Court sided, because [the defendant's] system targets phone numbers that were obtained in a non-random way (specifically, from consumers who provided them)." *Id.*; *see also Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 460 (7th Cir. 2020) (a system that "exclusively dials numbers stored in a customer database" is not an autodialer under the TCPA). Other courts have concluded similarly. *See Beal*, 29 F.4th at 394; *Franco v. Alorica Inc*, No. 2:20-cv-05035-DOC-KESX, 2021 WL 3812872, at *3 (C.D. Cal. July 27, 2021) ("When a defendant randomly makes calls from a curated list, it is not randomly or sequentially generating phone numbers."); *cf. Brickman v. Facebook, Inc.*, No. 16-cv-00751-WHO, 2021 WL 4198512, at *1 (N.D. Cal. Sept. 15, 2021) (rejecting an argument that a program that collected numbers and then used a random

generator to "store" the numbers in a random or sequential order was an autodialer under the TCPA).

In a similar vein, courts have rejected TCPA claims based on the alleged use of an autodialer where the plaintiff alleged that the contacted phone numbers were voluntarily provided to the defendant. *See, e.g.*, *Barry v. Ally Fin., Inc.*, No. 20-12378, 2021 WL 2936636, at *6 (E.D. Mich. July 13, 2021) (dismissing TCPA claim where the plaintiff alleged that "she, and purported class members, were called in connection with specific accounts held by Defendant for a specific purpose, and not through randomly or sequentially generated numbers"); *Borden v. eFinancial, LLC*, No. C19-1430JLR, 2021 WL 3602479, at *5 (W.D. Wash. Aug. 13, 2021) (the plaintiff failed to state a TCPA claim where he "expressly allege[d] that he provided his phone number to [the defendant]"); *Cross v. State Farm Mut. Auto. Ins. Co.*, No. 1:20-cv-01047, 2022 WL 193016, at *8 (W.D. Ark. Jan. 20, 2022) ("Jones specifically provided her phone number to State Farm. As such, Jones's phone number was never randomly or sequentially generated through any [autodialer] technology."). Here, Mr. Mina admits that he provided his telephone number to Red Robin. [Doc. 108 at ¶ 19].

The court is persuaded by this consistent line of post-*Duguid* authority. Because Mr. Mina does not sufficiently allege that the phone numbers at issue were randomly or sequentially stored, *see* [Doc. 108 at ¶ 39], and because allegations that a program randomly or sequentially *selects* numbers to be called are insufficient to establish that the program randomly or sequentially *produces* those numbers, *see Beal*, 29 F.4th at 395, Mr. Mina fails to allege that Defendants used an autodialer to send him the subject text messages for purposes of the TCPA.

The *Duguid* Court's much-discussed "footnote 7" does not change this analysis. In *Duguid*, the Supreme Court stated in a footnote that "an autodialer might use a random number

generator to determine the order in which to pick phone numbers from a preproduced list.  It would then store those numbers to be dialed at a later time."  141 S. Ct. at 1172 n.7.  According to Mr. Mina, this footnote is "an inarticulate way of describing how number generation works" but nevertheless renders the program used by Defendants an autodialer under the TCPA.  [Doc. 111 at 17-18].

The court disagrees with Mr. Mina's argument, which ignores the context of the Supreme Court's statement.  In *Duguid*, the Supreme Court addressed, *inter alia*, the plaintiff's argument that interpreting the clause "using a random or sequential number generator" to modify the verb "store" renders the TCPA's inclusion of "store" superfluous, as a device which stores numbers using a random generator would necessarily produce those numbers, too.  *See Duguid*, 141 S. Ct. at 1171-72, n.7.  In the context of that argument, the Supreme Court stated:

> It is no superfluity, however, for Congress to include both functions in the autodialer definition so as to clarify the domain of prohibited devices.  For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list.  It would then store those numbers to be dialed at a later time.  In any event, even if the storing and producing functions often merge, Congress may have "employed a belt and suspenders approach" in writing the statute.

*Id.* at 1172 n.7 (quotation and citations omitted).  But in referencing the hypothetical device which might both store *and* produce numbers randomly generated, the Court cited to an amicus brief submitted to the Court by the Professional Association for Customer Engagement ("PACE").  *See id.*  As a number of courts have noted, "[t]hat brief makes clear that the 'preproduced list' of phone numbers referenced in the footnote was *itself created through a random or sequential number generator*, differentiating it from the 'preproduced list' of phone numbers used by [Defendants]."  *Hufnus*, 2021 WL 2585488, at *1 (emphasis added); *see also Beal*, 29 F.4th at 396 ("The hypothetical system considered by the Court [in *Duguid*] was a system in which numbers were

sequentially generated before being stored and later randomly selected.") (citation omitted); *Timms v. USAA Fed. Sav. Bank*, 543 F. Supp. 3d 294, 301 (D.S.C. 2021) ("This court believes the Supreme Court's statement . . . refers to the process as explained by PACE on page 19 of its amicus brief."). Courts have thus consistently rejected the argument submitted by Plaintiff here. *See Beal*, 29 F.4th at 396; *Borden*, 2021 WL 3602479, at *5; *Hufnus*, 2021 WL 2585488, at *1; *Timms*, 543 F. Supp. 3d at 300. Because Mr. Mina expressly alleges that the program allegedly used by Defendants does not randomly or sequentially generate numbers, the *Duguid* footnote is of no consequence here. *Id.*

In the alternative, Plaintiff argues that interpreting *Duguid* to preclude "dialing systems that dialed stored lists of numbers using algorithmic data" from the reach of the TCPA's definition of autodialer "would render the consent requirements set forth under 47 U.S.C. § 227(b)(1)(A) irrelevant surplusage." [Doc. 111 at 19]. He asserts that an autodialer that is required to self-generate its own lists of numbers to dial "could never be used in compliance with the TCPA because there is by definition a lack of consent from an individual whose number is randomly generated." [*Id.* (emphasis omitted)]. Plaintiff's argument, however, ignores that the TCPA renders it unlawful for any person to make any non-emergency call without the express prior consent or the called party "using an automatic telephonic dialing system *or an artificial or prerecorded voice*." 47 U.S.C. § 227(b)(1)(A) (emphasis added). Moreover, as explained by the Supreme Court in *Duguid*, "Congress found autodialer technology to be uniquely harmful," as it "threatened public safety by 'seizing the telephone lines of public emergency services, dangerously preventing those lines from being utilized to receive calls from those needing emergency services.'" *Duguid*, 141 S. Ct. at 1167 (quoting H. R. Rep. No. 102-317, p. 24 (1991)). "It might well have been Congress's intention for [the consent provision] to do little or no work in relation

to [autodialer] calls; the Court disagrees with [Plaintiff] that it would be absurd to so interpret the statute." *Smith v. Premier Dermatology*, No. 17 C 3712, 2019 WL 4261245, at \*5 (N.D. Ill. Sept. 9, 2019).   Moreover, it is not difficult to imagine a scenario in which a company uses an autodialer to solicit a customer—thereby violating the TCPA—but the customer thereafter consents to receive automatic communications from that company, rendering the company's post-consent communications lawful, so as to create a clear line between the communications for which the company may and may not be held liable.   Accordingly, the court is not persuaded by Mr. Mina's argument.

Finally, Mr. Mina contends that it would be premature to dismiss his TCPA claim at the pleading stage and the court should instead permit him to engage in discovery to gather information about Defendants' technology in support of his claim.   [Doc. 111 at 14].   While Mr. Mina states that "[a] survey of post-[*Duguid*] decisions shows that district courts consistently favor allow plaintiffs to proceed with discovery over dismissing their claims at the pleading stage," *see* [*id.* at 14], the court respectfully disagrees with this characterization of the post-*Duguid* landscape.   The cases cited by Plaintiff primarily involve circumstances where it was <u>unclear</u> at the pleading stage whether the defendant's technology stored or produced numbers using a random or sequential number generator.   *See, e.g.*, *Miles v. Medicredit, Inc.*, No. 4:20-cv-01186 JAR, 2021 WL 2949565, at \*4 (E.D. Mo. July 14, 2021) ("At this stage of the case, the Court cannot determine whether Medicredit's dialer stores and/or produces telephone numbers using a random or sequential number generator."); *Atkinson v. Pro Custom Solar LCC*, No. SA-21-cv-178-OLG, 2021 WL 2669558, at \*1 (W.D. Tex. June 16, 2021) ("Plaintiff has pled enough facts to proceed with discovery, at which time she will have the opportunity to discover the precise technology that was used at the time of the alleged violation(s).").   These cases are readily distinguishable from

the instant matter, where Plaintiff's own allegations demonstrate that "the phone numbers to be called are stored in a list and [are] not themselves randomly or sequentially generated," but were rather provided by Plaintiff and others similarly situated.  [Doc. 108 at ¶¶ 38-39].

"[E]ven though a plaintiff will rarely, if ever, know the specific functionality of a system used by a defendant before discovery, the plaintiff must still allege sufficient facts to 'nudge' his claim across the line from conceivable to plausible."  *Watts v. Emergency Twenty Four, Inc.*, No. 20-cv-1820, 2021 WL 2529613, at *4 (N.D. Ill. June 21, 2021) (quotations omitted).  Where there is no dispute—as here—about the process Defendants used to text customers, no discovery is needed.  *Tehrani*, 2021 WL 3886043, at *6; *see also Brickman*, 2021 WL 4198512, at *3 (acknowledging that some courts have concluded that the determination of the autodialer question is best determined at the summary judgment stage, but noting that "in many of those cases, the plaintiffs alleged that they had never provided [the] defendant[s] with their phone numbers in the first place, making it at least plausible that a prohibited number generator had been used to produce or store the numbers called.").  Indeed, the Parties engaged in informal discovery with respect to the functionality of Defendants' technology, *see* [Doc 91; Doc. 95 at 2], and Plaintiff identifies no other discovery that is necessary for him to learn about the functionality at issue.  [Doc. 111 at 14-15].  Accordingly, the court finds that it is appropriate to recommend dismissal based on Plaintiff's failure to state a plausible TCPA claim based on Defendants' alleged use of an autodialer to send text messages to Plaintiff without further discovery.

## II.    The Use of an Artificial or Prerecorded Voice

Next, Defendants argue that Plaintiff's TCPA claim is similarly deficient insofar as it is based on allegations that Defendants used an artificial or prerecorded voice in their text messages to Plaintiff.  Defendants maintain that in the context of the TCPA, a "voice" necessarily requires

an "element of audible sound." [Doc. 110 at 10]. Mr. Mina responds that under "a plain language interpretation" of the TCPA, a "voice" does not require an audible sound because "there are dictionary definitions that extend voice to other forms of communication." [Doc. 111 at 21-22]. Mr. Mina urges the court to adopt his selected dictionary definition of the term "voice": "an instrument or medium of expression." [*Id.* at 21 (quoting *Voice*, Webster's Ninth New Collegiate Dictionary, 1320 (1991))]. Further, Mr. Mina contends that the legislative history of the TCPA demonstrates that "the artificial/prerecorded voice prohibitions hinge on the fact that the calls are agentless, i.e. the lack of having a conversation with someone on the other side who can respond to questions or frustration, and instead receiving a static, one-sided message," [*id.* at 22], and maintains that because the TCPA is a remedial statute, it should be construed broadly in his favor. [*Id.* at 23-24].

The TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The statute does not define the term "artificial or prerecorded voice." *See* 47 U.S.C. § 227. The court's "primary task in construing statutes is to 'determine congressional intent, using traditional tools of statutory interpretation.'" *N.M. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*, 248 F.3d 1277, 1281 (10th Cir. 2001) (quoting *NLRB v. United Food & Commercial Workers Union*, 484 U.S. 112, 123 (1987)). This analysis begins with the language of the statute itself. *Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 613 (10th Cir. 2018). When the plain language of the statute is clear and unambiguous, the "sole function of the courts" is to "enforce [the statute] according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v.*

*Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000)).   "The plainness or ambiguity of statutory

language is determined by reference to the language itself, the specific context in which that

language is used, and the broader context of the statute as a whole."   *Robinson v. Shell Oil Co.*,

519 U.S. 337, 341 (1997).   Only after the court has exhausted the traditional tools of statutory

interpretation may the court—cautiously—turn to the statute's legislative history.   *Kan. Nat. Res.*

*Coal. v. U.S. Dep't of Interior*, 971 F.3d 1222, 1237 (10th Cir. 2020).

Here, the court does not find Mr. Mina's proffered interpretation of the term "voice"

persuasive, as it "conflicts with a primary principle of statutory interpretation—that words in a

statute should generally be given their most natural understanding unless circumstances suggest

otherwise."   *Eggleston*, 2022 WL 886094, at *5; *see also United States v. Villa*, 589 F.3d 1334,

1343 (10th Cir. 2009) (the court must give effect to the "most natural reading" of statutory

language).   "The most natural, commonplace understanding of 'voice' is the sound produced by

one's vocal system."   *Eggleston*, 2022 WL 886094, at *5.   This interpretation is supported by the

statute's two qualifiers of "voice"—"artificial" and "prerecorded"—which can seamlessly

describe audible sound but which do not naturally describe "an instrument or medium of

expression."   Mr. Mina has cited no precedent to support of his expansive definition of "voice."

*See* [Doc. 111 at 21-24].   The court is simply not persuaded that Congress intended to ascribe to

the term "voice" the metaphorical meaning Plaintiff urges the court to adopt here.[3]   And absent

---

[3] Additionally, the court notes that the Federal Communications Commission has published
guidance distinguishing between "voice calls" and "text calls."   *See In Re Rules & Reguls.*
*Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003); *see also*
*see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) ("[A]gency interpretations and
guidelines, even when not controlling, constitute a body of experience and informed judgment to
which courts and litigants may resort for guidance.").   Thus, the court is respectfully not persuaded
by Mr. Mina's suggestion that "voice" and text" can be used interchangeably. *See* [Doc. 111 at 24
("If texts are calls, then texts are voices.")].

ambiguity or precedent to counsel otherwise, this court refrains from considering the legislative history to interpret or expand the scope the statute. *Kan. Nat. Res. Coal.*, 971 F.3d at 1237; *Navajo Nation v. Dalley*, 896 F.3d 1196, 1211 (10th Cir. 2018).

Because Mr. Mina's allegations rest on text messages, and because Mr. Mina does not plausibly allege that Defendants used an "artificial or prerecorded voice" in sending the subject text messages, the court finds that the present allegations are insufficient to state a TCPA claim under Rule 12(b)(6).  Furthermore, because Mr. Mina expressly alleges that he provided his phone number to Red Robin and that the numbers used by Defendants were not randomly or sequentially stored or produced, and because the text messages do not fall within the TCPA's proscription of calls using an "artificial or prerecorded voice," the court concludes that further amendment of Mr. Mina's claim would be futile. *See Borden*, 2021 WL 3602479, at \*6; *Eggleston*, 2022 WL 886094, at \*7.  Accordingly, the court respectfully **RECOMMENDS** that the Motion to Dismiss be **GRANTED** and that Plaintiff's claim be **DISMISSED with prejudice**. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

## CONCLUSION

For the reasons stated herein, this court respectfully **RECOMMENDS** that:

(1)  Defendants' Motion to Dismiss With Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. 110] be **GRANTED**; and

(2)  Plaintiff's claim be **DISMISSED with prejudice** for failure to state a claim. [4]

---

[4] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed.

DATED:  June 10, 2022                                    BY THE COURT:

                                                        _____
                                                        Nina Y. Wang
                                                        United States Magistrate Judge

---

R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).